JUAN, MIGUEL, ELADIO y MARÍA ESTHER VÁZQUEZ ROSARIO y RAMONA PEÑA, demandantes y apelados, *v.* EL PUEBLO DE PUERTO RICO, demandado y apelante.

Número 11082.

*Sometido:* 1 de abril de 1954. *Resuelto:* 25 de mayo de 1954.

Hon. Secretario de Justicia, José Trías Monge y José Antonio Arabía, Procurador Auxiliar, abogados del apelante; Bolívar Pagán, abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

Esta apelación envuelve una reclamación de daños y perjuicios contra El Pueblo de Puerto Rico, originada en un accidente en que un vehículo utilizado por el Servicio de Bomberos arrolló a Jovino Vázquez Rosario, conocido también por Jovino Rosario, ocasionándole la muerte. La reclamación está autorizada por una ley especial. Al ocurrir el accidente el vehículo era conducido por Santiago Rodríguez Medina, un bombero empleado o agente del demandado. A su lado iba Rosario Rosario, también agente del demandado, quien era precisamente la persona autorizada por el demandado para conducir el vehículo. Al ocurrir el accidente, en la ciudad de Juncos el 29 de julio de 1947, alrededor de las 10:00 A.M., el camión regresaba a la oficina del Servicio de Bomberos en Juncos, en un viaje destinado a echarle gasolina al vehículo y a "calentar" el vehículo. Esto es, no hay dudas de que, en el momento de ocurrir el accidente, el vehículo se utilizaba en la protección de los intereses de el pa-

trono.   Después de haberse celebrado la vista del caso en sus méritos, la Sala de San Juan dictó sentencia declarando con lugar la demanda, y condenando al demandado a pagar a los demandantes la suma de $10,000, de los cuales Ramona Peña, viuda de Jovino Vázquez, recibiría $8,000 y los demás demandantes, hermanos de dicho Jovino Vázquez, recibirían $500 cada uno, en virtud de sus "angustias mentales", y por haber perdido la sociedad y compañía de su hermano.

El demandado ha apelado para ante este Tribunal y ha señalado dos errores.   Alega en primer término el demandado que el tribunal a quo incurrió en error "al resolver que el chófer Rosario Rosario Rodríguez actuaba en el momento del accidente en el curso de sus funciones como empleado del Servicio de Bomberos, responsabilizando al demandado-apelante por la culpa de dicho chófer y en consecuencia de esto dictar sentencia contra el demandado en favor de los demandantes."

■■ De acuerdo con las conclusiones sobre los hechos formuladas por el tribunal sentenciador, que no han sido impugnadas, Rosario Rosario era la persona autorizada por el demandado para conducir el vehículo, pero, al ocurrir el accidente, el vehículo era conducido por Santiago Rodríguez quien, a pesar de ser un empleado del Servicio de Bomberos no estaba autorizado para conducir vehículos, y carecía de licencia para guiar vehículos.   Hubo prueba incontrovertida al efecto de que la dirección del Servicio de Bomberos había expedido órdenes expresas prohibiendo el que los vehículos del Servicio de Bomberos fuesen conducidos por otros empleados que no fuesen aquéllos que estuviesen específicamente autorizados a tal efecto.   Por lo tanto, al conducir el vehículo en cuestión, Santiago Rodríguez, no solamente no tenía licencia alguna para conducir vehículos, sino que lo hacía en forma contraria a las órdenes expresas del patrono demandado.   No obstante ello, al ocurrir el accidente, el conductor debidamente autorizado, Rosario Rosario, iba viajando en el mismo vehículo, precisamente al lado de Santiago Rodríguez. De

acuerdo con las conclusiones sobre los hechos del tribunal a quo, y con la prueba presentada, el accidente no se debió a actuación u omisión alguna de Santiago Rodríguez, quien venía conduciendo el vehículo en forma no autorizada, sino que fué ocasionado por la actuación de Rosario Rosario. El tribunal a quo dictaminó lo siguiente:

"Si bien es verdad que al momento de ocurrir el accidente estaba (Santiago Rodríguez Medina) en el sitio correspondiente al chófer, y a su lado el chófer Rosario Rosario Rodríguez, no es menos cierto que Rosario cogió el guía (y) trató de poner los frenos, y en vez de poner los frenos puso el pie en el acelerador, cogiendo en esa forma a Jovino Vázquez Rosario, produciéndole las lesiones que le causaron la muerte."

El tribunal sentenciador impuso responsabilidad al demandado, no en virtud de negligencia alguna de Santiago Rodríguez, conductor no autorizado, sino en virtud de la negligencia de Rosario Rosario. Alega el apelante que al permitir Rosario que Santiago Rodríguez se hiciera cargo del volante o guía del vehículo, no actuó Rosario dentro de las funciones de su empleo, ya que lo hizo en desobediencia de órdenes expresas de su patrono. Existe un conflicto en la jurisprudencia en cuanto a la responsabilidad de un patrono en virtud de la actuación negligente de una tercera persona al conducir un vehículo, en aquellos casos en que un agente del patrono, autorizado por este último a conducir el vehículo, permite que la tercera persona lo conduzca, en contra de órdenes específicas y expresas del patrono al efecto de prohibir que una tercera persona conduzca el vehículo (5 Am. Jur. 720, sec. 382 y anotaciones en 44 A.L.R., 1383, 54 A.L.R. 852, 98 A.L.R. 1044, 134 A.L.R. 978). Los casos que resuelven que no hay responsabilidad bajo tales circunstancias se amparan en el criterio de que la tercera persona actúa fuera de la esfera de autorización del patrono y que cualquier posible negligencia del agente autorizado al permitir que la tercera persona conduzca el vehículo no es imputable al patrono, ya que este último ha prohibido anteriormente el que se

conceda tal permiso a terceras personas, y, además, no podría predicarse negligencia alguna del patrono a base de falta de vigilancia o control adecuado de la conducta de la tercera persona, ni a base de negligencia en la selección de un conductor no autorizado. De otro lado, hay casos que imponen responsabilidad al patrono, bajo la teoría de que, esencialmente, el vehículo se ha utilizado en la defensa y protección de los intereses del patrono en el momento del accidente, independientemente de la identidad del conductor, y que el hecho en sí de la desobediencia de órdenes específicas del patrono puede ser un factor relevante, pero no es exclusivamente determinante.

En el caso de *Usera* v. *González*, 74 D.P.R. 487, se resolvió que un vendedor de automóviles autorizado por su patrono para permitir a un comprador potencial que se lleve un vehículo para probarlo, es negligente al entregar a tal comprador un carro sin antes indagar si tiene licencia de conductor, siendo tal negligencia imputable a su patrono. El caso citado no es precisamente aplicable al de autos, ya que en el de *Usera* v. *González* el patrono autorizó al agente a entregar la custodia del vehículo a una tercera persona.

El peso de las autoridades sostiene la tesis que aún si se ha actuado en forma contraria a órdenes específicas del patrono al permitirse a una tercera persona el conducir el vehículo, el patrono sería responsable si el conductor autorizado viaja en el mismo vehículo al lado de la tercera persona, ya que, en ese caso, el patrono está implícitamente presente en el vehículo, la tercera persona es el "alter-ego" del agente autorizado y este último retiene la custodia del vehículo en representación del patrono, y la negligencia del conductor autorizado al seleccionar como chófer a una tercera persona incompetente y al no vigilar ni controlar su conducta en forma adecuada, es imputable al patrono (5 Am. Jur. 721, sec. 383; 134 A.L.R. 978, *Restatement of the Law of Agency*, sec. 241, pág. 542–544).

En el caso de autos es innecesario el resolver el problema que hemos discutido y que ha sido planteado por el apelante, ya que, según concluyó el tribunal a quo, el accidente no se debió a negligencia alguna de Santiago Rodríguez, tercera persona no autorizada que guiaba el vehículo, sino que fué causado por la propia negligencia de Rosario Rosario, conductor autorizado quien viajaba en el vehículo al lado de Santiago Rodríguez. De acuerdo con la prueba y con las conclusiones sobre los hechos formuladas por el tribunal sentenciador, Rodríguez conducía el vehículo por una calle de Juncos, en un viaje "patronal", esto es, en protección de los intereses del patrono. Al llegar a una intersección, Rodríguez tenía la intención de seguir adelante, pero repentinamente Rosario se apoderó del guía y pretendió virar el vehículo y doblar la intersección para ir por otra calle, y, en ese momento Rosario puso el pie en el acelerador, en lugar del freno y debido a esa actuación negligente de Rosario, el vehículo arrolló a Jovino Vázquez, causándole la muerte. Por lo tanto, el hecho en sí de que el vehículo era conducido por una tercera persona no autorizada no fué la causa del accidente. La causa del accidente fué la negligencia del agente del demandado, precisamente autorizado por el demandado para conducir el vehículo. No fué cometido el primer error señalado.

El apelante señala como segundo error el haberse concedido compensación a los hermanos del finado en concepto, exclusivamente, de sufrimiento o angustias mentales y de pérdida de la compañía y sociedad del finado. Alega el apelante que en una acción por muerte, pueden recobrarse daños pecuniarios, pero que, en ausencia de tales daños pecuniarios, los daños por sufrimientos mentales, no son recobrables aisladamente. En este caso los codemandantes, hermanos del finado no demostraron haber sufrido daños pecuniarios.

En el caso de *Travieso* v. *Del Toro y Sepúlveda*, 74 D.P.R. 1009, resolvimos que el artículo 1802 del Código Civil

es la fuente básica de la acción por muerte y que la causa de acción por muerte no nace de derecho hereditario alguno, ya que no forma parte de la herencia del finado, sino que es una causa de acción individual de todas aquellas personas que sufran personalmente, daños y perjuicios en virtud de la muerte de otra persona. En el contexto de ese caso, hicimos referencia a los daños pecuniarios, ya que se estableció la realidad de ellos. También resolvimos que eran recobrables daños y perjuicios en virtud de sufrimientos mentales, conjuntamente con las sumas a ser recobradas por daños pecuniarios. Pero el caso de autos es el primero que se presenta ante este Tribunal, en que se piden daños y perjuicios en virtud de sufrimientos mentales exclusivamente ocasionados por la muerte de una persona, sin que se hayan sufrido daños pecuniarios.

Este Tribunal, siendo ponente el ex Juez Presidente Angel R. de Jesús, emitió una opinión, cabalmente orientadora, en el caso de *Rivera* v. *Rossi*, 64 D.P.R. 718, resolviéndose que, en una acción por embargo ilegal, el demandante podía recuperar daños y perjuicios en virtud de sufrimientos o angustias mentales exclusivamente, sin necesidad de demostrar que se hubiesen sufrido daños físicos. No se trataba de una acción por muerte, pero el razonamiento desarrollado, y los argumentos expuestos, en ese caso, son de entera aplicación al problema que ahora nos ocupa. En el caso citado de *Rivera* v. *Rossi* se indica lo siguiente, que ahora ratificamos:

(1) La acción de daños y perjuicios en ese caso está basada en el artículo 1802 del Código Civil. Lo mismo ocurre en cuanto a la acción por muerte.

(2) Dispone el art. 1802 que "el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". Los términos amplios y generales de ese artículo permiten la reparación de daños causados en virtud de daños morales o sufrimientos mentales exclusivamente, ya que el artículo no establece diferencia alguna entre daños físicos y daños morales, y si los daños mo-

rales son una consecuencia natural de la culpa o negligencia de un ·demandado, esto es, si realmente son causados por tal culpa o negligencia, ellos deben ser recobrables, especialmente en vista de que los sufrimientos mentales, en muchas ocasiones, tienen igual o mayor importancia que los daños físicos o pecuniarios.

(3) Los comentaristas y las autoridades del Derecho Civil, extensamente discutidos en el caso de *Rivera* v. *Rossi*, coinciden en la tesis de que son recobrables los daños por angustias mentales, independientemente de daños físicos o pecuniarios.

(4) Es criticable, por ser contraria a la regla de recuperación de daños causados por negligencia, la doctrina del Derecho Común que exige que haya ocurrido un "impacto", antes de que se puedan recobrar daños morales o mentales. Tal doctrina es obsoleta y no protege un interés importante de la personalidad humana, y ya las cortes americanas están repudiando esa doctrina restrictiva.

(5) El hecho de que la regla que permite compensación por daños morales exclusivamente pueda abrir las puertas a reclamaciones fraudulentas, ficticias o simuladas, no debe constituir un argumento que implique la inobservancia de los términos amplios y generales del artículo 1802. "Las cortes no deben negar reparación por daños realmente sufridos simplemente para evitar que haya un aumento de pleitos. Tampoco deben negar un remedio a quien en justicia lo merece sencillamente porque pueda presentarse un número de reclamaciones fraudulentas. Las reclamaciones fraudulentas se dan en todas las ramas del derecho y es el deber de las cortes distinguir las reclamaciones legítimas de las falsas . . . . Concedemos que los daños morales como los del presente caso no son susceptibles de una exacta compensación, pero la misma razón podría aducirse cuando se reclaman daños físicos y a la vez morales" (*Rivera* v. *Rossi*, supra, a las págs. 725 y 726). Complementando lo expuesto en el caso citado, debemos señalar que en Colin y Capitant,

tomo 6, pág. 817, se indica que "indiscutiblemente hay algo de fundamento en estas críticas. Pero parecerá aún más chocante que ninguna reparación viniese a compensar la pérdida. Si el arbitrio del juez es siempre un peligro, la negativa de toda sanción por el mal sufrido por obra de otro sería una injusticia escandalosa". Véanse además Planiol y Ripert, tomo 6, pág. 758, y Colombo, Culpa Aquiliana, pág. 758.

El caso de *Rivera* v. *Rossi*, supra, fué ratificado en el de *Muriel* v. *Suazo*, 72 D.P.R. 370.

La doctrina expuesta en el caso de *Rivera* v. *Rossi*, supra, en cuanto a la procedencia de una indemnización por daños o sufrimientos mentales exclusivamente, independientemente de daños pecuniarios y físicos, bajo el artículo 1802 del Código Civil, es también aplicable a las acciones por muerte ocasionadas por culpa o negligencia, ya que tal acción se rige por dicho art. 1802 (Colin y Capitant, tomo 3, pág. 817; Planiol y Ripert, tomo 6, pág. 890 y pág. 760, sec. 549).

En la sentencia del Tribunal Supremo de España de 19 de mayo de 1934, una madre reclamó daños y perjuicios ocasionados por la muerte de su hija, producida por la conducción negligente de un vehículo, se resolvió que, en casos de muerte, la naturaleza de los daños y perjuicios a ser indemnizados se determina por el art. 1902 del Código Civil de España (1802 nuestro), y no especialmente por el 1106 de España, (1059 nuestro) que determina que la indemnización de daños y perjuicios comprende, no sólo el valor de la pérdida que haya sufrido el acreedor, sino también el de la ganancia que él haya dejado de obtener. Se resolvió que en casos de pérdida *de la vida* o del honor, los daños y perjuicios son recobrables aunque no tenga una realidad apreciable de modo material y tangible, ya que cuando se trata de la pérdida de la vida y del honor, la valoración no puede descansar enteramente en el resultado de una prueba objetiva, debiendo entonces el tribunal sentenciador fijar de modo prudencial el importe de los daños, atendiendo a las circunstancias de la persona ofendida. La misma doctrina, que hace innece-

saria la demostración de daños materiales en casos de muerte, se ratifica en la Sentencia del Tribunal Supremo de España de 24 de mayo de 1947, en donde se indica lo siguiente:

"Cuando se trata de la vida y del honor no es posible una valoración material de los daños y perjuicios, por lo que . . . deja esa valoración al juzgador. Por ello el demandante se ha limitado a lo que le correspondía probar el hecho. La realidad de éste es indiscutible. De ella ha de derivarse forzosamente también la realidad del perjuicio. Es indudable que el padre que sufre una desgracia, como la que ha sufrido el recurrente, tiene un daño real y efectivo. Su importancia dependerá da las circunstancias de estado, edad, fortuna, etc. Ellas pueden influir para matizarle en más o menos, pero no para que se determine su existencia o inexistencia y para que se borre totalmente".

Surge un problema en cuanto a la identidad de las personas que puedan obtener indemnización por sufrimientos mentales exclusivamente, esto es, si tal facultad debe limitarse a los parientes del finado que presuntivamente sufran tales angustias mentales, o si el derecho debe extenderse a todas aquellas personas que, aunque no relacionadas con el difunto, demuestren al juzgador la realidad del daño sufrido, y de sus sufrimientos o angustias, invocando los términos del art. 1802 (cf. Colin y Capitant, tomo 3, pág. 817; Planiol y Ripert, tomo 6, pág. 760). Es innecesario resolver ese dilema en el caso de autos, ya que los codemandantes que eran hermanos del finado están colocados en la categoría obviamente permisible de aquellas personas que son parientes del difunto y que presuntivamente sufren daños morales o mentales en virtud de la muerte de su pariente. Por lo tanto, actuó correctamente el tribunal sentenciador al conceder compensación a los hermanos del difunto.

*Debe confirmarse la sentencia apelada.*

El Juez Presidente Sr. Snyder, aun cuando está ausente al momento de firmarse esta sentencia, participó en la discusión del caso y concurre en la opinión.